UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| HOYT MORRIS | ) C/A No. 4:10-3143-RBH-TER |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )REPORT AND RECOMMENDATION |
| | ) |
| WAYNE McCABE, WARDEN, | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

Petitioner, Hoyt Morris (Petitioner/Morris), is currently incarcerated at Evans Correctional

Institution. Petitioner appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254[1] on December 13, 2010. Respondent filed a motion for summary judgment on June

8, 2011, along with a return, supporting memorandum and exhibits. The undersigned issued an order

filed June 9, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising

Petitioner of the motion for summary judgment procedure and the possible consequences if he failed

to respond adequately. Petitioner filed a response on June 28, 2011. Petitioner also filed a motion

for summary judgment on April 11, 2011.

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate
Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.02 (B)(2)(c), DSC.
Because this is a dispositive motion, this report and recommendation is entered for review by the
district judge.

## MOTION FOR DEFAULT JUDGMENT

Petitioner filed a motion for default judgment on March 24, 2-11, asserting the Respondent did not serve the original motion to extend the time to file a return so that the order granting the motion to extend should be "reverse[d]." (Doc. #17). Respondent filed a response and amended motion to extend. (Doc. #19). In the response, Respondent asserts that upon a review of its records, "the pleading was mailed to Lieber Correctional Institution, the designated place of confinement on the petition for writ of habeas corpus rather than Evans Correctional Institution where Petitioner had apparently moved after mailing the petition." (Doc. #19). Therefore, Respondent asserted he was "re-serving, as amended this amended motion to extend in this pleading have corrected its records to reflect that Mr. Morris is in Evans Correctional Institution." Id.

Petitioner filed a reply on April 1, 2011, asserting that Respondent had fifty (50) days form the date of service to file a response which he calculated to be March 16, 2011. Petitioner asserts Respondent did not file the motion for extension until March 18, 2011. However, a review of the court's docket sheet reveals the Order authorizing service was entered on January 24, 2011, noting that the return and memorandum were due by March 18, 2011. (Doc. #10). Accordingly, Respondent filed a timely request for an extension to file the return.[2] Accordingly, it is recommended that Petitioner's motion for default judgment (doc. # 17) be denied.

---

[2] The court's docket sheet reveals the Respondent filed motions for extension on March 18, 2011, April 18, 2011, and May 18, 2011. The motions for extension were granted by the court.

# PROCEDURAL HISTORY

The procedural history as set out by the Respondent has not been disputed by the Petitioner. Therefore, the undisputed procedural history as stated by the Respondent is set forth herein, quoted verbatim, in part.

Petitioner is presently confined in the Evans Correctional Institution, of the South Carolina Department of Corrections (SCDC), as the result of his York County convictions. The York County Grand Jury indicted Petitioner at the July 15, 1999, term of court for fourteen counts of criminal sexual conduct with a minor, three counts of contributing to the delinquency of a minor, and two counts of disseminating obscene material to a person under age 18. The late Paul A. Knox, Esquire, represented Petitioner at trial. On February 7-11, 2000, Petitioner received a jury trial before the Honorable John C. Hayes, III. The jury found him guilty as charged. Judge Hayes sentenced Petitioner to confinement for a period of twenty (20) years for each count of criminal sexual conduct, with one count consecutive and the rest concurrent; to three (3) years, concurrent, for each count of contributing to the delinquency of a minor; and to five (5) years, concurrent, for each count of disseminating obscene material to a person under age 18.

Petitioner timely served and filed a notice of appeal. On appeal he was represented by Joseph L. Savitz of the South Carolina Department of Corrections. On February 5, 2002, Counsel Savitz filed the Final Brief of Appellate raising the following issues for review:

1.      The judge erred by denying appellant a new trial after it became clear that a juror lied to the court about her bias against homosexuality.

2.      The judge erred by refusing to allow appellant to introduce a Social Security Administration decision finding him disabled and refusing to allow him to demonstrate his disabilities to the jury.

3.     The judge erred by refusing to allow a defense witness to testify that the state's principal witness had told her that he would pay appellant back for flushing his marijuana down the toilet.

Final Brief of Appellant.

On February 19, 2003, the South Carolina Court of Appeals affirmed Petitioner's conviction and sentence. State v. Morris, Op. No. 2003-UP-144 (S.C.Ct. App. Filed February 19, 2003). (App. pp. 883-898). A timely petition for rehearing was filed on May 7, 2003. (App. pp. 899-901). On June 25, 2003, the South Carolina Court of Appeals denied the petition for rehearing. The Remittitur was sent on March 10, 2003, but was recalled March 11, 2003.

A Petition for Writ of Certiorari was filed October 7, 2003 raising a claim that "the Court of Appeals erred by affirming the trial judge's denial of a new trial where a juror lied about her religious bias against homosexuality." Respondent made a Return to the petition on October 16, 2003. The Supreme Court of South Carolina initially granted certiorari on May 14, 2004. The Brief of Petitioner was filed on August 10, 2004. The Brief of Respondent was filed on October 8, 2004. The South Carolina Supreme Court issued an order on January 25, 2004, dismissing the writ improvidently granted. State v. Morris, Order, Memo Op. 2005-MO-003 (S.C. S. Ct. January 24, 2005) (dismissed as improvidently granted). App. p. 902. The Remittitur was sent on February 9, 2005.

On June 1, 2005, Petitioner filed an application for Post-Conviction Relief (PCR). App. p. 903. In the application, he raised the claims of ineffective assistance of counsel and that the trial court lacked subject matter jurisdiction. App. pp. 904-910. The Respondent made its Return on or about December 6, 2005. App. pp. 913-919. An evidentiary hearing into the matter was convened on August 14, 2007, at the Moss Justice Center in York, S.C. App. p 920-934. The Petitioner was

present and represented by Edward B. Davis. The Respondent was represented by Assistant Attorney General Ashley A. McMahan. Testimony was received from the Petitioner. The application was denied on October 25, 2007, by the Honorable G. Edward Welmaker, Presiding Judge, App. pp. 935-941.

On October 24, 2008, Appellant Counsel Savitz filed a Petition for Writ of Certiorari with the South Carolina Supreme Court on behalf of Petitioner. The following issues were raised:

1.  The PCR judge erred by finding that trial counsel had not been ineffective in failing to request that the trial judge *voir dire* the prospective jurors as to whether they had any bias or prejudice against homosexuality.

2.  The PCR judge erred by finding that trial counsel had not been ineffective in failing to advance the proper evidentiary ground to impeach the key state's witness.

Morris v. State, Petition for Writ of Certiorari, p. 2. The Respondent, through Assistant Attorney General McMahan, made a Return to the Petition for Writ of Certiorari on March 12, 2009. On October 8, 2009, the Supreme Court of South Carolina entered an order granting certiorari as to issue one and denying certiorari on issue two and set a briefing schedule. Morris v. State of South Carolina (S. C. S. Ct. October 8, 2009) (order denying certiorari, granting certiorari and setting briefing schedule). The Brief of Petitioner was filed on January 7, 2010. The Brief of Respondent was filed on February 3, 2010. On May 3, 2010, the South Carolina Supreme Court entered its unpublished memorandum opinion affirming the denial of post-conviction relief. Morris v. State of South Carolina, Memo. Op. No. 2010-MO-012 (S.C. S. Ct. May 3, 2010). The Remittitur was issued on May 20, 2010.

## HABEAS ALLEGATIONS

Petitioner filed his petition on December 13, 2010, in which Petitioner raises the following allegations:

| | |
|---|---|
| **GROUND ONE:** | The trial court erred in denying Petitioner a new trial on a juror's intentional deception and concealment of bias against homosexuals. |
| **SUPPORTING FACTS:** | After trial it became clear that a juror lied to the trial court during *voir dire* about her bias against homosexuality. Moreover, the same juror also lied to the trial court when questioned on this issue when it was initially brought to the court's attention. This purposeful concealment of bias, which if revealed would have disqualified the juror, entitles Petitioner to habeas corpus relief. |
| **GROUND TWO:** | The trial court erred by refusing to allow Petitioner to introduce a Social Security Administration decision finding him disabled and by refusing to allow him to demonstrate his disabilities to the jury |
| **SUPPORTING FACTS:** | The charges brought against Petitioner were fabricated by the alleged victims. As part of his defense Petitioner attempted to demonstrate their implausibility by showing that he was physically disabled and therefore incapable of the sexual acrobatics alleged by his accusers. Petitioner's attempt to introduce evidence to corroborate his physical limitations was disallowed by the trial court thereby denying Petitioner his right to a fair trial. Petitioner is entitled to habeas corpus relief on this issue. |
| **GROUND THREE:** | The trial court erred by refusing to allow a defense witness to testify that the State's principal witness had told her that he would pay Petitioner back for flushing his marijuana down the toilet. |
| **SUPPORTING FACTS:** | Petitioner testified that the State's primary witness fabricated charges against him because he (the witness) was angry that Petitioner had flushed his (the witness) marijuana down the toilet. The witness made such statements to a mutual acquaintance who was |

prepared to testify to such. The State objected and the trial court sustained the objection. This error by the trial court denied Petitioner his right to a fair trial. Petitioner is entitled to habeas corpus relief.

GROUND FOUR:    Trial counsel was ineffective Petitioner was prejudiced through counsel's failure to request the trial court to *voir dire* the prospective jurors as to whether they had any bias against homosexuality.

SUPPORTING FACTS:    Petitioner was accused of having homosexual sex with two underage boys. Under the circumstances of this case trial counsel should have requested *voir dire* of the prospective jurors regarding their feelings about homosexuality. Petitioner is entitled to habeas corpus relief on this issue.

(Petition).

## STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

Thus, a writ may be granted if a state court "identifies the correct principle from [the Supreme] Court's decisions but unreasonably applies that principle of law" to the facts of the case. Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (citing Williams v. Taylor, 529 U.S. 362,

413 (2000)).  However, "an 'unreasonable application of federal law is different from an incorrect

application of federal law,' because an incorrect application of federal law is not, in all instances,

objectively unreasonable." *Id.*   "Thus, to grant [a] habeas petition, [the court] must conclude that

the state court's adjudication of his claims was not only incorrect, but that it was objectively

unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004).  Further, factual findings "made

by a State court shall be presumed to be correct," and a Petitioner has "the burden of rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).


## PROCEDURAL BAR

### A.  Exhaustion and Procedural Bypass

The doctrines of exhaustion and procedural bypass can bar a federal habeas claim if a

petitioner has not first submitted his claims for relief to the state courts.  Generally, pursuant to the

exhaustion doctrine[3], a habeas petitioner will be procedurally barred from bringing a federal habeas

claim if the claim has not first been presented to the state's highest court with authority to decide

the issue.  See 28 U.S.C. §2254[4]; Rose v. Lundy, 455 U.S. 509, 515 (1982).

---

[3]  As stated by the Supreme Court:

> The exhaustion doctrine existed long before its codification by Congress
> in 1948. In Ex parte Royall, 117 U.S. 241,251 (1886), this Court wrote
> that as a matter of comity, federal courts should not consider a claim in a
> habeas corpus petition until after the state courts have had an opportunity
> to act . . .

Rose v. Lundy, 455 U.S. 509, 515 (1982).


[4]  §2254(b) and (c) read as follows:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody
         pursuant to the judgment of a State court, shall not be granted unless it appears
         that

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction.  The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCAR 207; Blakeley v. Rabon, 266 S.C. 68,221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). See S.C. Code Ann.§17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually

---

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(I) there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

(2)     An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3)     A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

reached the merits of the claim. If any avenue of state relief is still available, the petitioner must present the issue to the state court before requesting a writ of habeas corpus in the federal courts. See Rose, 455 U.S. at 515; Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983); Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977).

If a petitioner fails to raise a claim at the appropriate time in state court and state procedural rules bar further means of presenting the issue to the state courts, the claim is procedurally bypassed and, generally, is procedurally barred from federal habeas review. Smith v. Murray, 477 U.S. 527, 533 (1986).

Federal courts have jurisdiction to consider habeas claims subject to procedural bar (through exhaustion or procedural bypass); however,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, 477 U.S. 533 (quoting Wainwright v. Sykes, 433 U.S. at 84 (1977)). See also Engle v. Isaac, 456 U.S. 107, 135 (1982).

B. Cause and Actual Prejudice

In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or

demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1988).

If a petitioner fails to show "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray v. Carrier, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

In Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. See Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

**ANALYSIS**

GROUND ONE

In Ground One, Petitioner argues that the trial court erred in denying him a new trial based on a juror's "intentional deception and concealment of bias against homosexuals." (Petition). Petitioner asserts "[a]fter trial it became clear that a juror lied to the court during *voir dire* about her

bias against homosexuality. Moreover, this same juror also lied to the trial court when questioned on this issue when it was initially brought to the court's attention. This purposeful concealment of bias, which if revealed would have disqualified the juror, entitles Petitioner to habeas corpus relief." (Petition).

Respondent asserts this matter has been exhausted in state court. Respondent contends that the Petitioner claimed that a juror intentionally concealed information about her feelings about homosexuality and made a motion for a new trial which was rejected by the state court after concluding that the comment was made prior to deliberations, that instructions were given that would have addressed the claim, and the jurors who recalled the comment declared it had no affect upon their verdict.

The South Carolina Court of Appeals held the following with regard to this issue:

> Morris argues the trial judge erred in denying him a new trial when it became clear a juror lied to the court about her bias against homosexuals.
>
> Morris testified at trial that he had "a strong belief in my Jesus Christ because my Saint James version Bible is laying right there where I've been sitting the whole time with my name in it." On February 9, 2000, court proceedings ended for the day after Morris' testimony. As the jurors were leaving the courtroom, two observers heard a female juror say to another juror "if the man really read the Bible he'd know that homosexuality is a sin." The observers informed Morris' counsel, and a hearing was held on the matter at the start of the proceedings when the trial resumed two days later.
>
> MB[5] testified that he was in attendance at the trial on February 9, and was walking down the stairs behind some of the jurors when he heard a lady give the statement about the Biblical views of homosexuality to another juror. MB recognized the woman as a juror. He described the physical characteristics of the woman and identified which seat

---

[5] The names were changed to initials in the briefs.

she occupied in the jury box. Jimmy Dean Holland, who was also attending the Morris trial, was with MB at the time in question. Holland testified that he heard the female juror say something about homosexuality being a sin. Holland identified the physical characteristics and the seat of the juror similarly to MB. The trial court called the juror into the courtroom to question her about the statement. When asked whether she discussed with another juror the Bible's view on homosexuality, the juror denied making the statement.

Morris moved for a mistrial, arguing that the juror ignored the court's direction not to discuss the case and that her statements may have affected the views of the other jurors. In the alternative, Morris urged the trial court to replace the juror with the alternate. After speaking with the juror, the trial court denied both of Morris' requests, noting that the juror denied making the statement. Later, after the verdict was read, the jurors indicated their affirmance of the verdict.

After the trial, an anonymous caller, who claimed to have been a juror on the Morris case, left a message with a local newspaper reporter stating that another juror had made the statement that if Morris had read his Bible he would know that homosexuality is a sin. The reporter informed the trial court of the message, and the parties held a hearing on the matter. The parties decided to send all the jurors a letter inquiring if they heard the statement and whether it affected their decision. All twelve jurors returned the questionnaire. Four of the twelve jurors indicated that they had overheard another juror, prior to instructions to begin deliberations, make the comment that Morris should know from the Bible that homosexuality is a sin. However, all four also indicated the statement did not "in any way whatsoever affect [their] consideration and/or decision and verdict." The remaining jurors indicated that they did not hear the statement.

After receiving the responses from the jurors, Morris moved for a new trial based on juror misconduct. He maintained the juror engaged in premature deliberations. He further argued that he was denied a fair trial by an impartial jury because the juror in question was biased against Morris and she intentionally concealed that bias. Morris also requested a hearing where the jurors would be placed under oath and questioned about the matter. The trial court denied the new trial motions, finding there was no evidence that the statement concerning Morris' homosexuality affected the deliberations in any way. The trial court also found the hearing was not warranted because the court

was satisfied the inquiry conducted through the juror questionnaires was sufficient.

Morris now argues the juror's intentional concealment of her bias against homosexuals and thus her suitability to be seated on the jury entitled him to a new trial. We disagree.

The denial of a new trial motion will be disturbed only upon a showing of an abuse of discretion. State v. Covington, 343 S.C. 157, 163, 539 S.E.2d 67, 69 (Ct. App. 2000); State v. Smith, 316 S.C. 53, 55, 447 S.E.2d 175, 176 (1993). Where a new trial motion is based on allegations that a juror gave misleading answers on *voir dire* or is based on alleged juror misconduct, the denial of the motion for a new trial will be reviewed for an abuse of discretion. Covington, 343 S.C. at 163, 539 S.E.2d at 69-70.

"A party seeking a new trial based upon the disqualification of a juror must show: (1) the fact of disqualification; (2) the grounds for disqualification were unknown prior to verdict; and (3) the moving party was not negligent in failing to learn of the disqualification before verdict." Thompson v. O'Rourke, 288 S.C. 13, 14, 339 S.E.2d 505, 506 (1986). A new trial is necessary only when the court finds the intentionally concealed information would have supported a challenge for cause or would have been a material factor in the use of the party's peremptory challenges. Id. at 15, 339 S.E.2d at 506; see also State v. Kelly, 331 S.C. 132, 146, 502 S.E.2d 99, 106 (1998). The first inquiry is whether the juror intentionally concealed information during *voir dire*. State v. Woods, 345 S.C. 583, 588, 550 S.E.2d 282, 284 (2001),

[I]ntentional concealment occurs when the question presented to the jury on *voir dire* is reasonably comprehensible to the average juror and the subject of the inquiry is of such significance that the juror's failure to respond is unreasonable. Unintentional concealment, on the other hand, occurs where the question posed is ambiguous or incomprehensible to the average juror, or where the subject of the inquiry is insignificant or so far removed in time that the juror's failure to respond is reasonable under the circumstances.

Id. (emphasis added). "where the juror's failure to disclose information is 'without justification,' i.e., intentional, the juror's bias will be inferred. Conversely, where the failure to disclose is innocent, no inference of bias can be drawn." Id. at 589, 550 S.E.2d at 285.

Morris relies upon <u>Thompson</u>, <u>Woods</u>, and <u>Kelly</u> to support his argument that he deserves a new trial due to the juror's intentional concealment of her bias, and that he need not show prejudice. However, this reliance is misplaced. Each of these cases dealt with a juror's concealment of material information during *voir dire*. <u>See</u> <u>Woods</u>, 345 S.C. at 585-86, 550 S.E.2d at 283 (juror failed to reveal she worked as a victim's advocate for the solicitor's office despite being asked on *voir dire* if she had any business association with the attorneys trying the case or supported any organization which had the primary function of protection of victims' rights); <u>Kelly</u>, 331 S.C. at 143-46, 502 S.E.2d at 105-107 (juror did not reveal he had participated in a death penalty rally when asked on *voir dire* if he had a "position" on the death penalty); <u>Thompson</u>, 288 S.C. at 14, 229 S.E.2d at 506 (two jurors failed to reveal during *voir dire* that they had been previously represented by one of the attorneys or his firm). While the jurors were asked on *voir dire* whether they were "aware of any bias or prejudice toward the nature of these cases," the jurors were not specifically asked whether they had any bias or prejudice against homosexuality. Further, there is no indication the jurors were informed of Morris' homosexuality prior to jury selection. <u>See</u> <u>Kelly</u>, 331 S.C. at 146, 502 S.E.2d at 107 (finding no intentional concealment of information during *voir dire* where juror, who failed to disclose prior participation in death penalty rally, was questioned about his "position" on the death penalty but was not specifically asked about any participation in death penalty activities).

We also find Morris suffered no prejudice. The trial court correctly made inquiry of the juror when the allegations were raised, and it found her denial to be credible. After announcing the verdict, the jury indicated that its verdict was unanimous. Further, upon receiving information that the juror lied about making the statement, the trial court promptly sent questionnaires to the jurors to find out if their verdict had been affected by the statement. Not one juror indicated that his or her vote had been affected. Because there is no evidence that the jury's vote was affected by the juror's statement, it is clear there is no prejudice in this regard.

App. pp. 888-892.

Petitioner's claims under Ground One are subject to the presumption of correctness and the State court's findings are sufficiently supported by the record. <u>See</u> <u>Greene v. Georgia</u>, 519 U.S. 145, 146 (1996) (*per curiam*); <u>Wainwright v. Witt</u>, 469 U.S. 412, 428, (1985); <u>Maynard v. Dixon</u>, 943

F.2d 407, 415 (4th Cir. 1991)(. . . the question of juror bias is to be resolved by the trial judge's assessment of demeanor and credibility, and that such assessments are to be accorded a presumption of correctness under 28 U.S.C. §2254(d)). First, the Court of Appeals found there was no intentional concealment from the juror during the initial *voir dire* since it was only asked if they were "aware of any bias or prejudice toward the nature of these cases," and were not specifically asked whether they had any bias or prejudice against homosexuality. Additionally, the South Carolina Court of Appeals found there was no indication the jurors were informed of Morris' homosexuality prior to jury selection.

The Sixth Amendment guarantees the right to a "trial[ ] by an impartial jury." U.S. Const. Amend. VI. "The right to trial by an impartial jury 'guarantees . . . a fair trial by a panel of impartial, indifferent jurors.' " Robinson v. Polk, 438 F.3d 350, 359 (4th Cir.2006) (*quoting* Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)). *Voir dire* plays an essential role in guaranteeing a criminal defendant's Sixth Amendment right to an impartial jury. United States v. Lancaster, 96 F.3d 734, 738 (*citing* Rosales-Lopez v. United States, 451 U.S. 182, 188, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981) (plurality opinion)). *Voir dire* "enabl[es] the court to select an impartial jury and assist[s] counsel in exercising peremptory challenges." Mu'Min v. Virginia, 500 U.S. 415, 431, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991); *see also* Rosales-Lopez, 451 U.S. at 188 (observing that *voir dire* is the means by which prospective jurors who are unwilling or unable to apply the law impartially may be disqualified from jury service); Scott v. Lawrence, 36 F.3d 871, 874 (9th Cir.1994) (noting that "[t]he principal purpose of *voir dire* is to probe each prospective juror's state of mind to enable the trial judge to determine actual bias and to allow counsel to assess suspected bias or prejudice"). At the very least, the *voir dire* was ambiguous such to render unintentional

concealment on the part of the juror. Most importantly, however, these factual findings are entitled to deference and Petitioner fails to show the factual findings of the state court were unreasonable or that the decision was contrary to, or involved an unreasonable application of, clearly established federal law and this court must defer to it. 28 U.S.C. § 2254(d)(1); Williams v. Taylor, 529 U.S. 362 (2000).

Next, we must address Petitioner's claim of preliminary deliberations and juror bias.

When the trial court was informed that someone overheard a juror making a comment to another juror about "homosexuality is a sin," the trial judge took testimony from the witnesses who overheard the comment to identify the comment and the identity of the juror who made the comment. Afterwards, the trial judge had the juror brought out for questioning. The trial judge questioned the juror asking "I hate to single you out, but one of the, someone said they heard you say something about homosexuality in its relation to the Bible to another juror yesterday, do you recall saying anything like that?" App. p. 608. The trial judge again asked the juror, "[y]ou didn't say anything like that" to which the juror stated that she did not. Id. The trial judge stated that "[w]ell, she claimed she didn't say it. I'm not going to go behind her and what she tells me." App. p. 609. Therefore, the trial court found that she did not make the comment and denied the motion for a new trial. App. p. 609. Subsequently, the case proceeded and a verdict of guilty was returned. After the guilty verdict, the court received notice that a newspaper reporter received a voice message from an anonymous juror stating that after Morris testified, she heard a juror state that Morris should know from reading his Bible that homosexuality was a sin. App. p. 801. As a result, the trial court conducted a hearing and then sent out a questionnaire to all twelve of the jurors. All of the questionnaires were signed and returned with eight jurors indicating they did not hear the comment

prior to the court instructing the jury to deliberate and four indicating they heard the statement but it did not "in any way whatsoever affect your consideration and/or decision and verdict on the indictments against Mr. Morris." As a result of the responses to the questionnaires, the trial judge entered an order stating that "[a]dmittedly the court was incorrect in concluding that the juror did not make the comment. However, misconduct of a juror is to be determined by the trial judge from the circumstances of each case. State v. Smith & Crawford, 1999 WL 1211712 (S.C. App. Dec. 6, 1999)." App. p. 800. The trial court found that, even though the juror in fact made the statement concerning Morris' homosexuality, the verdict was not affected in anyway. The trial judge found no prejudice to the defendant. Thus, the trial judge concluded that "[a]lthough a formal hearing was not conducted, the court advised the jurors that their oath taken in the Morris case applied when answering the questions posed in the juror questionnaire. The court is satisfied beyond a reasonable doubt that the inquiry conducted was sufficient to protect Morris' fundamental right to a fair and impartial jury trial." App. pp. 803-804.

This court's inquiry should address Petitioner's challenge under the analysis appropriate to claims of juror misconduct for improper preliminary deliberations and then that analysis appropriate to juror bias. Neither the jury nor individual jurors can begin deliberations until the case is concluded and the law has been charged. See, Harbin v. Warden, 2011 WL 1162395 (D.S.C. Jan. 27, 2011), citing to State v. Aldret, 333 S.C. 307, 509 S.E.2d 811, 813 (S.C.1999) ("[I]nstructions which invite jurors to engage in premature deliberations constitute reversible error."). In State v. Aldret, 509 S.E.2d at 814, the court held that a defendant must demonstrate prejudice from

premature deliberations in order to be entitled to a new trial.[6] In this case, Petitioner has failed to show prejudice in that he has failed to show that the predeliberative statement made by the juror prior to the jury being instructed to deliberate affected the outcome of their decision.[7] The trial judge gave an instruction during the trial and each juror responded in the questionnaire either that they did not hear the comment or it had no affect on their verdict. Clearly, Petitioner fails to show those findings are contrary to, or involved an unreasonable application of, clearly established federal law and this court must defer to it or that the findings involved an unreasonable determination of the facts based on the state court record. 28 U.S.C. § 2254(d)(1).

Finally, Petitioner asserts that the presence of a biased juror violated his right to an impartial jury. Whether or not the juror was biased is not necessary to this court's resolution of this issue. [8] Assuming, for the sake of argument, it was error for the juror to be or remain on the jury, "[t]he principles of comity, federalism, and finality prevent [this court] from overturning [Petitioner's] conviction, unless we are convinced that the error had substantial and injurious effect or influence in determining . . . the verdict, . . . or entertains grave doubt that it has such effect." Fitzgerald, 150 F.3d at 365 (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)) (other citations and

---

[6] In his instructions to the jury before deliberations, the trial judge specifically instructed the jurors that Petitioner was not on trial for a lifestyle, that his lifestyle was not an issue in the case, and that the issue was whether he committed the offenses. App. p. 690.

[7]Although Rule 606 expressly prohibits the introduction of juror testimony regarding both the content and the effect of statements occurring during the jury's deliberations, the South Carolina Supreme Court recognized an exception to that prohibition. The South Carolina Supreme Court held in State v. Hunter, 463 S.E.2d 314, 316 (1995), that juror testimony involving internal misconduct may be received only when necessary to ensure fundamental fairness.

[8] It is noted that the trial court did not conduct a hearing to question, or allow the parties to question the juror or jurors. cf. Fitzgerald v. Green, 150 F.3d 357, 364 (4th Cir. 1998) ("the remedy for allegations of jury partiality is a hearing in which the defendant has the opportunity to prove actual bias.")(quoting, Smith v. Phillips, 455 U.S. 209, (1982).

quotations omitted). In other words, this court conducts a harmless error analysis in determining the prejudice to the Petitioner. See Bauberger v. Haynes, 632 F.3d 100, 104-5 (4th Cir. 2011)(explaining the impact of the AEDPA on the analysis under Brecht, infra, and Chapman v. California, 386 U.S. 18 (1967)).

As repeated in Bauberger, the Court must determine whether an error had a "substantial and injurious effect or influence in determining the jury's verdict." The Court further explained, "[i]n the 'unusual' situation where 'the matter is so evenly balanced that [the habeas judge] feels himself in virtual equipoise as to the harmlessness of error [under Brecht]'-that is, where the judge is in 'grave doubt'-the court must grant the writ." Id. at 104 (quoting O'Neal v. McAninch, 513 U.S. 432, 435 (1995)).

Based on the forgoing, the trial judge's instruction to the jury that the Petitioner was not on trial for his lifestyle, the jury questionnaire, combined with the overwhelming evidence of guilt against Petitioner, the undersigned cannot conclude that the juror's presence on the jury had a substantial and injurious effect or influence in determining the jury's verdict." Accordingly, it is recommended that summary judgment be granted with respect to Ground One.


GROUND TWO

In Ground Two, Petitioner alleges the trial court erred by refusing to allow Petitioner to introduce a Social Security Administration decision finding him disabled and by refusing to allow him to demonstrate his disabilities to the jury. Petitioner wanted to be able to present this evidence to attempt to demonstrate that it was physically impossible for him to perform the sexual acrobatics alleged by his accusers due to his physical limitations.

Respondent argues this issue should be dismissed. One of the reasons Respondent asserts this issue should be denied is because evidentiary rulings are generally considered state law matters.

The South Carolina Court of Appeals addressed this issue pursuant to South Carlina Rules of Evidence. Thus, this is an issue of state law evidence. A state court's decision on a question of state law is binding in federal court. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Thomas v. Davis, 192 F.3d 445, 449 n. 1 (4th Cir. 1999). Thus, it is recommended that this issue be dismissed and Respondent's motion for summary judgment granted with respect to this ground.


GROUND THREE

In Ground Three, Petitioner asserts the trial court erred in refusing to allow a defense witness to testify that the state's principal witness had told her that he would pay Petitioner back for flushing his marijuana down the toilet. Petitioner alleges that the state's witness made such statement to a mutual acquaintance who was prepared to testify.

Respondent asserts that any claim concerning the exclusion of evidence is not a proper ground for federal habeas relief. Further, Respondent contends that it is not up to the federal court to determine whether the state court or court of appeals properly applied the South Carolina Rule of Evidence.

The South Carolina Court of Appeals addressed this issue pursuant to South Carlina Rules of Evidence. The undersigned concludes that this is an issue of state law evidence. A state court's decision on a question of state law is binding in federal court. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Thomas v. Davis, 192 F.3d 445, 449 n. 1 (4th Cir. 1999). Thus, it is recommended that

this issue be dismissed and Respondent's motion for summary judgment granted with respect to this ground.


GROUND FOUR

In Ground Four, Petitioner alleges trial counsel was ineffective and Petitioner was prejudiced through counsel's failure to request the trial court to *voir dire* the prospective jurors as to whether they had any bias against homosexuality. Petitioner asserts he was accused of having sex with two underage boys. Therefore, Petitioner contends counsel should have requested *voir dire* of the prospective jurors regarding their feelings about homosexuality.

Respondent argues in response that the PCR court was correct in finding that counsel was effective. Respondent asserts that the state court reasonably applied the United States Supreme Court precedent in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Respondent states that "[i]n a later trial court hearing, it was conceded that the parties were not entitled to *voir dire* jurors about their specific beliefs regarding homosexuality. Supp. App. P. 14, lines 4-9. Trial counsel also noted that due to the rape shield law he could not go into victims' 'extensive homosexual background.'" App. Vo. I of II, page 87, lines 6-10." (Respondent's memorandum, p. 40).

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland, supra, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances,

the identified acts or omissions were outside the <u>wide</u> <u>range</u> of professionally competent assistance.  (Emphasis added.)

In <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495 (2000), *quoting* <u>Strickland</u> at 694, the Court held that "[to] establish ineffectiveness, he [a defendant] 'must show that counsel's representation fell below an objective standard of reasonableness, and to establish prejudice he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Thus, the Court confirmed that the correct standard for judging ineffective assistance of claims is the <u>Strickland</u> standard.

The PCR court held as follows:

> This Court finds in regard to the allegation of ineffective assistance of counsel, the Applicant's testimony is not credible. This Court further finds trial counsel was thoroughly competent in their representation, and that trial counsel's conduct does not fall below the objective standard of reasonableness.

> This Court has also reviewed the whole record of the lengthy trial and finds that there is nothing in the record to substantiate Applicant's claims of trial counsel's disabilities during the trial or his ineffectiveness as counsel . . .   As to the claims of improper *voir dire* and issue preservation, the burden of proof is not met as to inadequate counsel. The lengthy trial, while not perfect, was fair. <u>See State v. Jones</u>, 35 S.C. 310, 318, 479 S.E.2d 517, 521 (Ct. App. 1996).

(App. pp. 938-939).

This issue was one of two raised in the Petition for Writ of Certiorari. The Supreme Court granted the Petition for a Writ of Certiorari as to this question. After the parties briefed this issue, the South Carolina Supreme Court entered an order filed May 3, 2010, affirming the conviction

citing Rule 220(b)(1), SCACR and several authorities holding that the Court gives great deference

to the PCR court's findings of fact and conclusions of law.

Before selecting the jury in this case, the trial judge asked if there were any other *voir dire*.

At that time, trial counsel said he had a request and a bench conference was held. (App. p. 61).  The

trial judge also stated the following to the jury panel:

> Mr. Morris is charged with 19 different, in 19 indictments with various counts of criminal sexual conduct with a minor, contributing to the delinquency of a minor, obscene material, and obscene material[sic].
>
> I first ask are any of you related by blood or marriage or close personal friend or acquaintance of Mr. Hoyt Morris if so please stand. No one stands.
>
> Any of you know anything about these cases. Let me back up. The victim in the cases are one (Minor victim one) and (Minor Victim 2).[9] Are any of you related by blood or marriage or good friends of either or those minor children or their parents or family if so please stand. No one stands.
>
> . . .
>
> Are any of you aware of any bias or prejudice that you may have toward Mr. Morris, his counsel, the state, or the state's counsel, or any bias or prejudice toward the nature of these cases if so please stand. No one stands.

(App. pp. 62-64).

The trial judge subsequently asked :

> Have any of you or a member of your family and I'm not going to ask you particulars but have any of you been the victim of or charged, you or a member of your family a victim of or charged with an offense such as this, criminal sexual conduct, if so please stand.

(App. p.69).

---

[9] The names of the minor victims have been redacted by the State.

A female juror stood and said that she had been a victim and was already upset and did not think she would "be able to take it." (App. p. 69). Said juror was excused. After the *voir dire* was complete, the trial judge asked if there was anything from the defense. Trial counsel stated: "[y]our honor, I believe you gave a question that approximated what I had?" (App. p. 69). The court responded "I tried to. Yes, I think I did about the subject matter, yes." (App. p. 70).[10]

The trial court questioned the jurors and concluded that the jury did not take into account the Petitioner's sexual orientation when deciding the case. App. pp. 769-804. In the trial court's order after trial counsel's motion for a new trial, the judge, after going over the history of what had transpired, concluded that "Although the statement regarding Morris' homosexuality was made prior to the court's instructing to begin deliberating, all twelve jurors reported under their oath that the jury's final verdict was not affected in anyway by the statement." (App. p. 803).

---

[10] The PCR court noted in a footnote Justice Shuler's dissent in the order from the direct appeal he stated the following:

> Initially, I agree with the majority that our first line of inquiry is whether the juror intentionally concealed relevant information during *voir dire*. The record reveals the trial court asked prospective jurors the following question: "are any of you aware of any bias or prejudice that you may have toward Mr. Morris, his counsel, the State, or the State's counsel, or any bias or prejudice toward the nature of these cases . . . , " Although it may have been unclear at this point in <u>voir dire</u> that Morris was in fact homosexual, there can be no doubt that potential jurors were aware of the nature of the charges against him, i.e., that they were informed Morris had been indicted on numerous counts of criminal sexual conduct with a minor and that the minors in question were named Minor Victim One and Minor Victim Two(male names). Thus, the criminal acts alleged were clearly homosexual in nature.

(App. p. 897).

As previously stated, a presumption of correctness attaches to state court factual findings. 28 U.S.C. §2244(e)(1). Evans v. Smith, supra; Wilson v. Moore, supra. The presumption of correctness imposed by §2254(e)(1) applies to findings by state appellate courts as well as trial courts. See Sumner v. Mata, supra. The state PCR court's findings of fact are not only entitled to the presumption of correctness, 28 U.S.C. § 2254(e)(1), but also are supported by the record. The PCR court's rejection of the ineffective assistance of counsel ground for relief was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); Williams, supra. Even assuming, *arguendo,* that Petitioner's counsel was found to be ineffective with respect to this issue, Petitioner has not shown prejudice based on the fact that all twelve jurors responded to the questionnaire that any comment with regard to homosexuality did not influence their decision and Petitioner has failed to show bias on the part of the juror.[11] Therefore, Petitioner has not shown that but for counsel's alleged[12] failure to request the *voir dire*, the result of the proceeding would have been different. Strickland, Id.[13] Accordingly, the undersigned

---

[11] A presumption of correctness attaches to state court factual findings. 28 U.S.C. §2244(e)(1). Evans v. Smith, supra; Wilson v. Moore, supra. The state PCR court's findings of fact are not only entitled to the presumption of correctness, 28 U.S.C. § 2254(e)(1), but also are supported by the record. Further, based on the above, conclusion of law based upon those findings is neither contrary to, nor involved an unreasonable application of, clearly established federal law and this court must defer to it.28 U.S.C. § 2254(d)(1); Williams v. Taylor, supra.

[12] A bench conference was held before *voir dire* at trial counsel's request as discussed previously in this report and recommendation.

[13] Even if the questionnaire did not address the question of bias or prejudice of the juror who made the comment, Petitioner failed to show bias, prejudice, or lack of ability to be impartial at PCR and, thus, fails to show prejudice.

recommends that Respondent's motion for summary judgment be granted with respect to this Ground.

## CONCLUSION

Based on the foregoing, it is RECOMMENDED that Petitioner's motion for summary judgment (doc. #23) be DENIED and Respondent's  motion for summary judgment (doc. #31) be GRANTED, and that the Petitioner's Petition for Writ of Habeas Corpus be DENIED, and the petition dismissed without an evidentiary hearing.

It is further RECOMMENDED that Petitioner's motion for default judgment (doc. #17) be DENIED and all outstanding motions be deemed MOOT.

Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 9, 2012
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**